UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNION INSURANCE CO. OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY CO., <br>     Plaintiffs, <br><br> v. <br><br> CARL ANGUS, Individually and On Behalf of THE E.W. BURMAN, INC. PROFIT SHARING PLAN, EDWARD BURMAN, PAUL BURMAN, E.W. BURMAN, INC., <br>     Defendants. | C.A. No. 24-cv-535-MRD-AEM |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Edward Burman, Paul Burman, and E.W. Burman, Inc. (collectively, the "Burman Defendants"), are being sued in this Court by a former employee—Carl Angus—for allegations of violating the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA").[1] Union Insurance Company of Providence and Employers Mutual Casualty Company (collectively, "Plaintiffs") insure the Burman Defendants through a general liability insurance policy. After Angus sued the Burman Defendants in the Underlying Case, the Burman Defendants sought a defense to the lawsuit through their insurer who now seeks a declaratory judgment

---

[1] The docket number for that case is 24-cv-328-MRD-AEM and will be referred to as the "Underlying Case," with the Complaint in that case referred to as the "Underlying Complaint."

that they have no duty to defend or indemnify the Burman Defendants under the insurance policy. After examining the insurance policy and allegations in the Underlying Complaint and considering the parties' arguments, this Court concludes that Plaintiffs do not have a duty to defend. Accordingly, the Motion for Judgment on the Pleadings is GRANTED.

I.   BACKGROUND

*Underlying Case*

Carl Angus worked for E.W. Burman for 38 years, from September 1984 to July 2023. ECF 20-2, Ex. A ¶ 2. The Burmans were trustees of the E.W. Burman Inc. Profit Sharing Plan ("Plan") and were responsible for administering the Plan as well as investing the Plan's assets. *Id.* ¶¶ 1, 3. Carl Angus retired in July 2023 and sought to have his funds distributed to him, which he believed would occur based on the value of the account in 2023. *Id.* ¶ 1. The Burmans, however, allegedly informed their recordkeeper that Angus' retirement date was December 31, 2022, and failed to credit the account with year-to-date investment earnings through July 2023 when he actually retired. *Id.* ¶¶ 2, 3. The Burmans calculated Angus' fund distribution as of the end of 2022, allegedly resulting in shorting Angus hundreds of thousands of dollars because the distribution did not include the gains to his account in 2023. *Id.* ¶¶ 21, 25.

The Underlying Complaint alleges the following violations: Count 1) 29 U.S.C. § 1132(a)(1)(B) for "benefits owed pursuant to a plan," Count 2) 29 U.S.C. § 1132(a)(2)–(a)(3) for "breach of fiduciary duty," and Count 3) 29 U.S.C.

2

§ 1103(1) which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan . . . ." *Id.* ¶¶ 31–44. The instant Complaint, brought by the Burman Defendants' insurers, seeks a declaratory judgment that they have no duty to defend Defendants from the claims in the Underlying Case. ECF No. 20 at 1.

*Relevant Insurance Contract Provisions*

Defendants assert the Plaintiffs' duty to defend and indemnify is based on the Employee Benefits Liability Coverage Endorsement ("EBL Endorsement"). *See generally* ECF No. 29. The Insurance Contract provides coverage in particular situations under Coverage A and B, but Defendants do not seek coverage under these sections. Plaintiffs analyze why Coverage does not exist under Coverage A and B at ECF No. 20-1 at 9–11. Since Defendants do not assert coverage under Coverage A or B, the Court will not join the Plaintiff in engaging in that analysis and, instead, will focus on the EBL Endorsement and the exceptions. The EBL Endorsement provides the following, in relevant part:

    **COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

. . .

    b. This insurance applies to damages only if:

        (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program"

  2. **Exclusions**

    This insurance does not apply to:

      a. **Dishonest, Fraudulent, Criminal or Malicious Act**

      Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

. . .

      g. **ERISA**

      Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

. . .

G. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

  1. "Administration" means:

    a. Providing information to "employees," including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b. Handling records in connection with the "employee benefit program"; or

    c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

    However, "administration" does not include handling payroll deductions.

. . .

  4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits.

ECF No. 20-2 at 45–46, 49–50.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte-Torres et al. v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)). "A motion for judgment on the pleadings is appropriate when it is clear from the pleadings that the movant should prevail." *Am. States Ins. Co. v. LaFlam*, 808 F. Supp. 2d 400, 402–03 (D.R.I. 2011) (quoting *Burns v. Conley*, 526 F. Supp. 2d 235, 241 (D.R.I. 2007)). In assessing a motion for judgment on the pleadings, "the Court 'view[s] the facts contained in the pleadings in the light most flattering to the nonmovant[]. . . and draw[s] all reasonable inferences therefrom in [its] favor.'" *Atain Specialty Ins. Co. v. Old River Rd. Dev. LLC*, C.A. No. 1:22-cv-00380-MSM-LDA, 2023 WL 6276569, at *2 (D.R.I. Sept. 22, 2023) (alterations in original) (quoting *Aponte-Torres*, 445 F.3d at 54).

"In general, the duty to defend an insured in this jurisdiction is determined by applying the 'pleadings test.' That test requires the trial court to look at the allegations contained in the complaint, and 'if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff.'" *Progressive Cas. Ins. Co. v. Narragansett Auto Sales*, 764 A.2d 722, 724 (R.I. 2001)

5

(citing *Peerless Ins. Co. v. Viegas*, 667 A.2d 785, 787 (R.I. 1995)). This is also known as the "four corners of the complaint" rule. *Emhart Indus. Inc., v. Home Ins. Co.*, 515 F. Supp. 2d 228, 236 (D.R.I. 2007). "Under the pleadings test, the insurer's duty to defend is ascertained by laying the complaint 'alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured.'" *Id.* (quoting *Employers' Fire Ins. Co. v. Beals*, 240 A.2d 397, 402 (1968)). "[I]f the complaint disclose[d] a statement of facts bringing the case *potentially within* the risk coverage of the policy the insurer will be duty-bound to defend irrespective of whether the plaintiffs in the tort action can or will ultimately prevail." *Travelers Cas. and Sur. Co. v. Providence Washington Ins. Co., Inc.*, 685 F.3d 22, 25 (1st Cir. 2012) (quoting *Flori v. Allstate Ins. Co.*, 388 A.2d 25, 26 (R.I. 1978)) (emphasis added). "Generally speaking, the insured seeking to establish coverage bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy . . . [and] [t]he insurer then bears the burden of proving the applicability of policy exclusions and limitations…." *Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998).

### III.  DISCUSSION

Before examining the arguments, the Court must address the documents it will consider when ruling on this motion for judgment on the pleadings. Defendants' Objection references several exhibits, including correspondences between the parties, declarations of Defendants, a claim for benefits, etc. ECF No. 29, Exhibits 4–14. Plaintiffs argue that reference to these exhibits is improper and that in a duty to

6

defend action, such as this, the Court's inquiry should be a strict application of the "pleadings test" which would limit the Court's review to the factual allegations in the Underlying Complaint. ECF No. 31 at 1–3. While Defendants are generally correct that sometimes a court deciding a Rule 12(c) motion may consider documents extraneous to the pleadings, in a duty to defend case "[the pleadings] test limits this Court's review to the factual allegations contained in the underlying [] complaint." *Allstate Ins. Co. v. Greloch*, No. 11-015 ML, 2011 WL 4351630, at *4 (D.R.I. 2011). "[The insured's] invitation to look outside the complaint runs contrary to controlling authority." *Id.* (citing *Thomas v. Am. Universal Ins. Co.*, 93 A.2d 309, 312 (R.I. 1952)); *see also Flori*, 388 A.2d at 26 (explaining that "the pleadings test 'determines an insurer's duty to defend even if the known facts conflict with the facts alleged in the third-party complaint'"). Defendants rely on *Curran v. Cousins*, which restates the general exception that courts deciding 12(c) motions "may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" 509 F.3d 36, 44 (1st Cir. 2007). But that case did not involve an insurer's duty to defend, and that court was not bound by the pleadings test. Therefore, the Court will not consider the extrinsic documents in evaluating if Plaintiffs are entitled to judgment on the pleadings.

    A.    EBL Endorsement

The question for the Court is whether the Underlying Complaint pleads facts that would bring the case *potentially within* the risk coverage of the policy. *Travelers*

7

*Cas. and Sur. Co.*, 685 F.3d at 25. Plaintiffs argue that "[a] failure to pay benefits in violation of an employee benefit plan is not an act, error or omission negligently committed and, in that context, there can be no coverage." ECF No. 20-1 at 12. Defendants respond that this interpretation "would render the EBL Endorsement [policy] a nullity" and that the EBL "policy broadly defines '[a]dministration' to include [], advising employees, handling Plan records, and continuing and/or terminating an employee's participation in the [p]lan." ECF No. 29 at 12. Defendants also argue that "[t]he Underlying Complaint alleges that EWB improperly valued Angus' Plan balance based on its December 2022 valuation, improperly disbursed the Plan balance mid-year and improperly denied his subsequent claim for benefits. The Underlying Complaint alleges that EWB *negligently* administered both the Plan and Angus's claim for benefits." *Id.* at 13 (emphasis added).

Plaintiffs' argument rests on several out-of-jurisdiction cases, with the main one being *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415 (7th Cir. 1993). This case involved employers who stopped funding an employee pension fund after a collective bargaining agreement expired because they believed their obligation terminated with the agreement. *Id.* at 416. The fund obtained judgment against the employer for the unpaid contributions, and the employer then sued its insurer for indemnity.[2] *Id.* at 416–17. The Court only had to

---

[2] The Court notes that "[u]nder Rhode Island law, an insurer's duty to defend is broader than its duty to *indemnify.*" *Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 540 (D.R.I. 1995) (citing *Mellow v. Med. Malpractice Joint Underwriting Assn.*, 567 A.2d 367, 368 (R.I. 1989)).

8

"determine whether [employer's] failure to pay the pension fund contributions in question was a 'negligent act, error or omission' within the policy's substantive coverage." *Id.* at 419. In concluding there was no duty to indemnify, the Court focused on the employer's contractual liability to the fund and reasoned that "[t]he Fund was awarded amounts [] pursuant to the collective bargaining agreement, not damages for negligence, and [those] payments [were] not covered by [employer's] policy." *Id.* at 419-20. It added that "even though the insured's actions in precipitating the breach may have been careless, they were not covered by the policy." *Id.* at 420. In finding there was no duty to indemnify, the Court put forth the following explanation:

> Under [the employer's] logic, any default arising from a mistaken assumption regarding one's contractual liability could be transformed into an insured event. Indeed, refusing to pay a debt in reliance upon erroneous advice of counsel would convert a contractual debt into damage arising from a negligent omission. We dare not imagine the creative legal theories treading just short of malpractice and frivolity that could seek to transform [contractual] obligations into insured events.

*Id.* This rationale was adopted by the First Circuit in *Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 593 (1st Cir. 2004). In agreeing with the Seventh Circuit, the Court explained that "[i]t makes no sense to permit a dereliction in duty to transform an uninsured liability into an insured event." *Id.* The Court quoted Judge Posner, who had opined on the practical implications of the decision:

> It would be passing strange for an insurance company to insure a pension plan (and its sponsor) against an underpayment of benefits, not only because of the enormous and unpredictable liability to which a claim for benefits on behalf of participants in or beneficiaries of a pension plan of a major employer could give rise, but also because of the

9

> acute moral hazard problem that such coverage would create . . . Such insurance would give the plan and its sponsor an incentive to adopt aggressive (just short of willful) interpretations of ERISA designed to minimize the benefits due, safe in the belief that if, as would be likely, the interpretations were rejected by the courts, the insurance company would pick up the tab. Heads I win, tails you lose.

*Id.* (quoting *May Dept. Stores Co v. Fed. Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002)).

The Defendants here are doomed by the rationale explained in *Baylor Heating & Air Conditioning* and adopted by the First Circuit in *Pacific Insurance*. The Underlying Complaint alleges that Angus' former employer distributed the funds in his account in mid-2023 after telling the bookkeeper that his employment ended in 2022, rather than distributing the funds at the end of 2023 when the market rebounded from a poor 2022. ECF 20-2, Ex. A ¶¶ 18–21. The EBL policy is clear that it only applies if "[t]he act, error or omission, is negligently committed in the 'administration' of [the] 'employee benefit program.'" ECF No. 20-2 at 45 (EBL Endorsement Sec. A.1.b.(1)). Even if the Burmans believed it was correct to disburse funds based on the value of the account at the end of 2022, "th[is] belief[] do[es] not change the contractual nature of the obligation." *Baylor Heating & Air Conditioning, Inc.*, 987 F.2d at 419. The inquiry is not "directed toward [the Burman Defendants'] motives" and the court "need not decide whether [the Burman Defendants] acted in good faith when it" decided to distribute funds based the 2022 end of year value. *Id.* The *Baylor* Court also said, "[t]he Fund was awarded amounts owed pursuant to the collective bargaining agreement, not damages for negligence." *Id.* at 419–20; *see also Cincinnati Ins. Co. v. Metro. Props.*, 806 F.2d 1541, 1543 (11th Cir. 1986) (holding that "damages resulting from a breach of contract are not covered by a negligent-error

10

policy" and "that the word 'negligent' as used in the policy must be given its legal meaning and is not synonymous with 'carelessness or slack'). This Court adopts the same logic and reasoning because the amount owed to Angus is governed by the Plan, and any damages would be based on the contractual relationship, "not damages for negligence." *Id.*

At this stage, even when "the Court 'view[s] the facts contained in the pleadings in the light most flattering to the nonmovant[] . . . and draw[s] all reasonable inferences therefrom in [its] favor,'" *Atain Specialty Ins. Co.*, 2023 WL 6276569, at *2 (alterations in original) (quoting *Aponte-Torres*, 445 F.3d at 54), the Court finds that the EBL Endorsement does not trigger Plaintiffs' duty to defend in the Underlying Case.

### B. ERISA Exclusion

That said, even if the factual allegations in the Underlying Complaint trigger the EBL Endorsement, the ERISA Exclusion to that Endorsement provides a secondary reason to grant Plaintiffs' motion. The Plaintiffs argue that "[t]he language of the exclusion is unambiguous and excludes coverage for '[d]amages arising out of any intentional … act, error or omission' committed by the Burman Defendants." ECF No. 20-1 at 21. They argue that the following allegations in the Underlying Complaint bring this case within the ERISA Exclusion.

> 3. As a result of their role in managing and administering the Plan's assets and the discretion they exercised in that capacity, the Burmans are fiduciaries of the Plan pursuant to 29 U.S.C. §§ 1002(21), (38).

11

> 4. Based on its authority as well as its actual exercise of discretion in managing and administering the Plan, the Company is a fiduciary under ERISA.
>
> 23. Alternatively, even assuming the Plan permitted a non-retirement distribution earlier than the end of the 2023 Plan year, Defendants breached their fiduciary duties by failing to perform a valuation of the Plan's assets and of Plaintiff's account before distributing his account balance.
>
> 24. Under ERISA, whenever a Plan Document gives a trustee or Plan Administrator discretion as to whether to take a certain action, the party is acting as a fiduciary when they take that action, but also when they decide *not* to take that action.
>
> 25. Therefore, the Burmans were acting in a fiduciary capacity when declining to revalue the Plan's assets and Mr. Angus's account when he withdrew the balance from his account.
>
> 26. The First Circuit has recognized that self-interested conduct when determining whether to revalue a plan's assets constitutes a breach of fiduciary duty. *Janeiro v. Urological Surgery Professional Ass'n*, 457 F.3d 130, 136 (1st Cir. 2006).

Underlying Complaint ¶¶ 3–4, 23–26. Defendants' response merely recites the specific paragraphs in Count I of the Underlying Complaint, and they argue "Count I does not seek to impose liability on a fiduciary. There is no allegation that a fiduciary acted improperly." ECF No. 29 at 23.

When "an insurer asserts that it is not obligated to defend due to some policy exclusion or exclusions, it bears the initial burden of demonstrating that the exclusion applies" and it must apply to all counts and for all liability. *Scottsdale Ins. Co. v. Byrne*, 913 F.3d 221, 228–29 (1st Cir. 2019) (citing *Saint Consulting Grp., Inc. v. Endurance Am. Spec. Ins. Co., Inc.*, 669 F.3d 544, 550 (1st Cir. 2012)). The ERISA Exclusion is clear that the Policy does not cover "[d]amages for which any insured is

12

liable because of liability imposed on a fiduciary by [ERISA]." ECF No. 20-2 at 46 (EBL Endorsement Sec. A.2.g.). In addition to the aforementioned paragraphs of the Underlying Complaint, *supra* p. 11–12, paragraphs 31, 35, and 41 of the Underlying Complaint state that "Plaintiff incorporates the foregoing paragraphs by reference." Given the Underlying Complaint is replete with ERISA related allegations, specifically that the Plan administrators violated a fiduciary duty imposed by ERISA, and that those allegations are incorporated into each of Angus' three claims, the Court finds that the ERISA Exclusion would have applied even if the EBL Endorsement triggered Plaintiffs' duty to defend.

## IV. CONCLUSION

Based on the allegations in the Underlying Complaint and the plain language of the insurance policy, the Court concludes that the duty to defend is not triggered. Therefore, Plaintiffs' Motion for Judgment on the Pleadings is GRANTED.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

11/24/2025